**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0295-24

NEWPORT ASSOCIATES
DEVELOPMENT COMPANY
and NEWPORT ASSOCIATES
PHASE I DEVELOPERS LIMITED
PARTNERSHIP,

     Plaintiffs-Respondents,

v.

CHUBB CUSTOM INSURANCE
COMPANY, MT. HAWLEY
INSURANCE COMPANY, and INDIAN
HARBOR INSURANCE COMPANY,

     Defendants,

and

AIG SPECIALITY INSURANCE
COMPANY f/k/a CHARTIS
SPECIALTY INSURANCE COMPANY
f/k/a AMERICAN INTERNATIONAL
SPECIALTY LINES INSURANCE
COMPANY,

     Defendant-Appellant,

and

ALLIED WORLD ASSURANCE COMPANY (U.S.) INC., ALLIED WORLD NATIONAL ASSURANCE COMPANY, ALTERRA AMERICA INSURANCE COMPANY, ASPEN AMERICAN INSURANCE COMPANY, ASPEN SPECIALITY INSURANCE COMPANY, ENDURANCE AMERICAN INSURANCE COMPANY, ENDURANCE AMERICAN SPECIALTY INSURANCE COMPANY, ILLINOIS UNION INSURANCE COMPANY, NATIONAL SURETY CORPORATION, MARKEL AMERICAN INSURANCE COMPANY, NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, NAVIGATORS INSURANCE COMPANY, NORTH AMERICAN SPECIALTY INSURANCE COMPANY, STEADFAST INSURANCE COMPANY, GREAT AMERICAN ASSURANCE COMPANY, THE OHIO CASUALTY INSURANCE COMPANY, PHILADELPHIA INDEMNITY INSURANCE COMPANY, ST. PAUL FIRE AND MARINE INSURANCE COMPANY, STARR INDEMNITY & LIABILITY COMPANY, UNITED STATES FIRE INSURANCE COMPANY, WESTCHESTER FIRE INSURANCE COMPANY, XL INSURANCE AMERICA, INC., ZURICH AMERICAN INSURANCE COMPANY, AMERICAN GUARANTEE AND LIABILITY INSURANCE COMPANY, and LIBERTY INTERNATIONAL UNDERWRITERS, INC.,

      Defendants.

_____

2

A-0295-24

Argued April 29, 2025 – Decided May 28, 2025

Before Judges Sumners and Susswein.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Docket No. L-3482-18.

Robert Lewin (Steptoe LLP) of the New York bar, admitted pro hac vice, argued the cause for appellant (Saiber LLC, Robert Lewin, and Christopher Ash (Steptoe LLP), attorneys; Lisa C. Wood, Gregory Dennison, Robert Lewin, and Christopher Ash, on the briefs).

Mark S. Olinsky argued the cause for respondents (Sills Cummis & Gross PC, attorneys; Mark S. Olinsky, Thomas Novak, and David L. Cook, of counsel and on the brief).

PER CURIAM

Defendant AIG Specialty Insurance Company (ASIC) appeals the Law Division's denial of its motion to compel arbitration of its insurance coverage dispute with Newport Associates Development Company and Newport Associates Phase I Developers L.P. (collectively Newport). Having conducted a de novo review of the record, see Skuse v. Pfizer, Inc., 244 N.J. 30, 46 (2020), we conclude ASIC waived any right to arbitration based on the factors delineated by our Supreme Court in Cole v. Jersey City Medical Center, 215 N.J. 265, 280-81 (2013).

A-0295-24

I.

Lawsuit Origins

In two separate incidents in 2008 and 2009, the northern seawall sections of the Jersey City Sixth Street Pier collapsed into the Hudson River. The pier runs parallel to a thirty-foot-wide underwater easement granted by the pier's owner, Newport, for high-voltage electric cables to transmit electricity from Jersey City to Brooklyn. The cables, owned by PSE&G and Con Edison (collectively utilities), were installed several feet under the riverbed and insulated with dielectric fluid—a refined petroleum product.

In November 2016, the utilities filed a lawsuit (Utilities Litigation) against Newport after dielectric fluid was discovered in the river near the pier. Almost two years later, in September 2018, Newport filed this declaratory judgment action (DJ Action) seeking defense coverage and liability indemnification from thirty-two defendants — primary, excess, and umbrella insurers, including ASIC — in the Utilities Litigation arising from its insurance policies. Newport filed a second amended complaint in March 2019.

A-0295-24

<u>Newport and ASIC Insurance Policies</u>

In November 2015, a year before the Utilities Litigation was filed, Newport and ASIC entered into a Commercial Real Estate Pollution Legal Liability Policy (Policy), containing the following arbitration provision:

> F. Arbitration — It is hereby understood and agreed that all disputes or differences that may arise under or in connection with this Policy, whether arising before or after termination of this Policy, including any determination of the amount of Loss, <u>may</u> be submitted to the American Arbitration Association under and in accordance with its then prevailing commercial arbitration rules. The arbitrators <u>shall</u> be chosen in the manner and within the time frames provided by such rules. If permitted under such rules, the arbitrators <u>shall</u> be three disinterested individuals having knowledge of the legal, corporate management, or insurance issues relevant to the manners in dispute.
>
> Any party <u>may</u> commence such arbitration proceeding and the arbitration <u>shall</u> be conducted in the Insured's state of domicile. . . . Where the language of this Policy is alleged to be ambiguous or otherwise unclear, the issue <u>shall</u> be resolved in the manner most consistent with the relevant terms, conditions, provisions or exclusions of the Policy.
>
> [(Emphasis added).]

The Policy also contains the following provision:

> U. Service of Suit — Subject to Section VI. CONDITIONS, Paragraph F, above, it is agreed that in the event of failure of the Company to pay any amount claimed to be due hereunder, the Company, at the

5

request of the Insured, will submit to the jurisdiction of a court of competent jurisdiction within the United States.

ASIC also provided Newport with an umbrella policy for 2008-2009 (Umbrella Policy), which includes a pollution exclusion — Exclusion Q. The Umbrella Policy also contains an arbitration clause that specifically pertains to interpretive disputes concerning Exclusion Q. The arbitration clause states:

In the event of a disagreement as to the interpretation of Exclusion Q. of this policy or a disagreement as to the interpretation [of] any endorsements attached to this policy amending Exclusion Q., the disagreement shall be submitted to binding arbitration before a panel of three (3) arbitrators.

[(Emphasis added).]

Trial Court Litigation

In ASIC's answer to Newport's second amended complaint, it collectively asserted eighty-six affirmative defenses without reference to the arbitration clauses in the Policy or Umbrella policies. ASIC's answer asserts it is "not estopped from relying on" nor has it "intentionally relinquished any right to rely on all terms, conditions, definitions, limitations, exclusions, deductibles, [s]elf-[i]nsured [r]etentions, limits of insurance, and/or any other provisions contained" in the policies. Yet, ASIC included a jury demand and a Rule 4:5-1 certification stating "[t]he matter in controversy is not the subject of any other

6

action pending in any court or any pending arbitration proceeding, and <u>no such other action or arbitration proceeding is presently contemplated</u>."  (Emphasis added).

The parties engaged in extensive discovery producing over 266,000 pages of documents and 183 gigabytes of data.  ASIC "served at least three sets of interrogatories and three sets of document demands to the parties" in the underlying Utilities Litigation.  The parties received at least thirty-nine deposition transcripts and at least seventeen expert reports from the Utilities Litigation.  ASIC served seventy-two document demands on Newport.

The parties also engaged in motion practice.  ASIC successfully cross-moved for partial summary judgment regarding the proper method of allocating defense costs in February 2021, joined in a motion to compel Newport to produce documents in May 2021, and opposed Newport's cross-motion for partial summary judgment in February 2022.

The trial judge stayed this action four times.  On January 25, 2019, Newport's uncontested motion to stay proceedings was granted, and the case was "stayed for 90 days while the defendants engage in [] joint defense agreement negotiations."  On August 9, 2019, a six-month stay was imposed to allow the parties to engage in limited discovery to determine whether the defendants were

A-0295-24

"able to reach an agreement on a joint defense arrangement" as well as "the reimbursement of defense costs incurred to date" by Newport in the Utilities Litigation. On April 8, 2020, a four-month stay was imposed. The last stay occurred on May 9, 2022, lasting twenty-seven months, when the parties entered into a joint stipulation agreement whereby defendants "agreed to participate in the defense of . . . [Newport] subject to the terms of a joint defense agreement," and to stay proceedings until the Utilities Litigation resolved.

On January 23, 2024, after the Utilities Litigation was resolved by mediation at the end of 2023 and while the last stay was pending, ASIC notified Newport and the trial judge for the first time that it intended to arbitrate Newport's indemnity claim. On the day the last stay was lifted, June 24, 2024, ASIC moved to compel arbitration and to impose another stay of the proceedings.

The trial judge denied ASIC relief. In an oral decision, the judge explained that under the "totality" of the factors pronounced in Cole, 215 N.J. at 280-81, "[ASIC] waived [its] right to arbitration" by "engag[ing] in litigation conduct that was . . . inconsistent with its right to arbitrate." Even though the judge noted ASIC waived arbitration, he also found the Policy did not mandate arbitration, emphasizing the use of the permissive term "may," especially

because "other provisions . . . included the term 'shall.'" The judge determined there was no controlling authority requiring Newport to arbitrate under these circumstances and declined to adopt the reasoning in an unpublished decision cited by ASIC. The judge also found that the Umbrella Policy arbitration clause, though mandatory, was inapplicable here. ASIC appealed.

## II.

### A.

Our review of an order on a motion to compel arbitration is de novo, see Skuse, 244 N.J. at 46, and, thus, we do not defer to the trial judge's interpretative analysis unless it is persuasive, Kernahan v. Home Warranty Adm'r of Fla., Inc., 236 N.J. 301, 316 (2019). Similarly, "[t]he issue of whether a party waived its arbitration right is a legal determination subject to de novo review." Cole, 215 N.J. at 275. "Nonetheless, the factual findings underlying the waiver determination are entitled to deference and are subject to review for clear error." Ibid.

A demand for arbitration is not granted "when a party to a contractual arbitration provision has waived the right to compel arbitration, by its actions or inactions." Marmo & Sons Gen. Contracting, LLC v. Biagi Farms, LLC, 478 N.J. Super. 593, 602 (App. Div. 2024); see also Cole, 215 N.J. at 276. Our state

9

has "a presumption against waiver of an arbitration agreement, which can only be overcome[] by clear and convincing evidence that the party" seeking to enforce the arbitration agreement "chose to seek relief in a different forum." Spaeth v. Srinivasan, 403 N.J. Super. 508, 514 (App. Div. 2008).

In Cole, our Supreme Court set forth seven non-dispositive factors for a trial judge's consideration when analyzing whether a party waived their right to arbitration based on litigation conduct:

> (1) the delay in making the arbitration request; (2) the filing of any motions, particularly dispositive motions, and their outcomes; (3) whether the delay in seeking arbitration was part of the party's litigation strategy; (4) the extent of discovery conducted; (5) whether the party raised the arbitration issue in its pleadings, particularly as an affirmative defense, or provided other notification of its intent to seek arbitration; (6) the proximity of the date on which the party sought arbitration to the date of the trial; and (7) the resulting prejudice suffered by the other party, if any.
>
> [215 N.J. at 280-81.]

An assessment of the Cole factors "must focus on the totality of the circumstances," which requires "a fact-sensitive analysis." Id. at 280. "In making that assessment, courts 'concentrate on the party's litigation conduct to determine if it is consistent with its reserved right to arbitrate the dispute.'"

10

Hopkins v. LVNV Funding LLC, 481 N.J. Super. 49, 63 (App. Div. 2025) (quoting Cole, 215 N.J. at 280).

B.

We analyze ASIC's arbitration demand through the prism of the seven Cole factors.

First Factor

The first factor, "the delay in making the arbitration request," weighs in favor of ASIC waiving arbitration. The litigation began in September 2018, and ASIC did not advise Newport and the trial judge that it sought to arbitrate the dispute until January 2024, and filed its motion to compel arbitration on August 1, 2024. Thus, the notice was provided five years and four months after suit was filed, with the motion being filed seven months later. This is unlike the relatively brief six-month delay in seeking a waiver allowed for the self-represented defendant in Spaeth, 403 N.J. Super. at 516, and it exceeds the lengthier twenty-one-month delay resulting in an arbitration waiver in Cole, 215 N.J. at 281. Under these circumstances, ASIC's delay in demanding arbitration was well beyond a reasonable time.

ASIC contends it appropriately withheld its arbitration demand until the indemnity claim was ripe after the Utilities Litigation was resolved through

11

mediation in 2023, while the last stay was in effect. ASIC asserts "arbitration could not have resulted in a binding resolution of the claims between [it] and Newport until Newport settled with the other insurers because any arbitration result could have been undone by the contribution claims held by Newport's other insurers." Citing Chassen v. Fidelity Nat'l Fin., Inc., 836 F.3d 291, 297 (3d Cir. 2016), for the proposition that "futility can excuse the delayed invocation of the defense of arbitration," ASIC claims arbitration was "futile" until the Utilities Litigation was resolved. ASIC emphasizes it promptly demanded arbitration after more than three years of stays had been lifted. Thus, given the context that Cole requires, ASIC contends the relevant period of "delay" in making its demand for arbitration was roughly five weeks, as it moved to compel arbitration on August 1, 2024, about five weeks after the stay was lifted on June 24, 2024. These assertions are unpersuasive.

Despite the four lengthy stays in this matter, ASIC was not restrained from exercising its contractual rights to seek arbitration. Even discounting the approximately three years and four months the case was stayed, ASIC still waited about two years while the litigation was not stayed to notify Newport and the trial judge of its intent to arbitrate. ASIC should have promptly exercised its right to arbitrate its dispute with Newport after it was sued. Well before the

last stay was imposed on May 9, 2022, lasting twenty-seven months, ASIC could have expressed its intent to arbitrate. Indeed, ASIC notified Newport and the judge in January 2024, well before the last stay ended on June 24, 2024, that it intended to arbitrate. It was unnecessary for ASIC to wait until the stay lifted to communicate its intent and there was no reason why ASIC could not have done so well before January 2024. For almost six years, Newport was under the belief that the dispute would be determined by a jury.

We also see no valid reason why the demand for arbitration had to wait until the Utilities Litigation resolved. While the issues in the separate lawsuits are intertwined, ASIC should have timely informed Newport that it was exercising its arbitration rights rather than sitting on them for almost six years. If it was necessary to resolve the Utilities Litigation before the DJ action, the arbitration proceeding could have been held in abeyance. If that occurred, at least Newport would have known that its claims against ASIC would not be adjudicated before a jury as it was led to believe until ASIC's notification in January 2024, some five years and four months after the suit was filed. We agree with Newport that "arbitration of the indemnity claim was . . . not futile" and ASIC should have exercised its right to arbitrate at the outset of the litigation "regardless of whether the award would later be enforceable vis-à-vis other

13

insurers," as this is the "strategic choice" parties to multi-party litigation, like ASIC, must make. Cole supports this conclusion, as it counsels the waiver "analysis is not affected by the fact that non-arbitrable claims initially were present in the lawsuit." 215 N.J. at 283. As Newport points out, "ASIC is a sophisticated insurer that should have known at the time it entered into the Policy that there would or could likely be other insurers involved in a subsequent claim by Newport" who were not subject to their bilateral insurance agreement.

ASIC's reliance on Chassen is misplaced. As a federal court decision, it does not control our consideration of a state law contractual claim. Moreover, it is not persuasive because, there, the futility was due to a motion to compel arbitration that was "almost certain to fail" because the law precluded arbitration of the claim, see Chassen 836 F.3d at 299, not because it would be inefficient to arbitrate due to other defendant insurers not being bound by the arbitration.

Second Factor

The second factor, engaging in motion practice before the trial judge, weighs in favor of ASIC waiving arbitration. ASIC engaged in extensive motion practice: it successfully cross-moved for partial summary judgment in February 2021; opposed Newport's cross-motion for partial summary judgment regarding allocation of defense costs in February 2021; and opposed Newport's cross-

motion for partial summary judgment relating to the Umbrella Policy. Thus, ASIC seeking and opposing relief during motion practice is inconsistent with a "reserved right to arbitrate the dispute," as it demonstrates "submission to the authority of a court to resolve the dispute." Cole, 15 N.J. at 280, 282.

Third Factor

The third factor, whether waiting to request arbitration was a litigation strategy, weighs in favor of waiver. As we stated in Hopkins, "a party's litigation strategy may be difficult to discern." 481 N.J. Super. at 64. That said, we have no reason to disagree with the trial judge's factual finding that, given ASIC is a sophisticated party, he was "convinced under the circumstances [it made] . . . a calculated decision" to delay seeking arbitration. The pleadings of ASIC, a national insurer—not demanding arbitration in its affirmative defenses, certifying that arbitration is not contemplated, and making a jury demand—combined with its conduct in serving discovery and actively litigating motions, strongly indicates to a conscious litigation strategy to not demand arbitration.

Fourth Factor

The fourth factor, measuring the extent of discovery conducted, weighs in favor of waiver. ASIC contends "the majority of the discovery to date," which is all paper discovery, relates to the duty to defend, not to Newport's indemnity

15

claim, which is the focus of the arbitration demand. ASIC also points to the lack of depositions. These assertions are unpersuasive. ASIC and Newport engaged in significant discovery, responding to each other's interrogatories and document demands, which serve as evidence to be presented at trial. As for depositions, Newport stresses that ASIC received thirty-nine deposition transcripts from the Utilities Litigation, therefore limiting the depositions needed to address Newport's indemnity claim. There is no factual or legal support for ASIC's contention that the defense and indemnification claims should be treated separately in the context of an arbitration waiver analysis. Also, even though there have been no depositions, ASIC undoubtedly "obtain[ed] the early benefit of discovery that might not have been so easily obtainable in arbitration," which tilts this factor in favor of waiver. Marmo, 478 N.J. Super. at 612.

Fifth Factor

The fifth factor, pleading arbitration as an affirmative defense, weighs heavily against ASIC. A "responsive pleading shall set forth specifically and separately . . . [each] affirmative defense including . . . arbitration." R. 4:5-4. ASIC's argument that its thirty-second affirmative defense asserting it "ha[d] not intentionally relinquished any right to rely on all terms, conditions, . . . and/or any other provisions contained in the ASIC Pollution Policy" fails. None of

16

ASIC's eighty-six affirmative defenses mention its contractual arbitration clause as Rule 4:5-4 requires. In Cole, the Court emphasized the defendant did not demand arbitration in any of its thirty-five affirmative defenses. 215 N.J. at 281. More telling is that ASIC specifically demanded a jury trial and certified pursuant to Rule 4:5-1(b)(2) that it was not contemplating arbitration. ASIC's assertion that its certification "was accurate when filed as it 'presently' did not contemplate any other action or arbitration" until after the Utilities litigation settled holds little weight. As we held in Hopkins, a party's failure to raise arbitration as an affirmative defense and Rule 4:5-1(b)(2) certification to the contrary "weigh[ed] heavily in favor of wavier." 481 N.J. Super at 65.

Sixth Factor

The sixth factor, measuring the time frame between when arbitration was demanded and the trial date, does not apply because a trial date had not yet been set. See Marmo, 478 N.J. Super. at 613.

Seventh Factor

The seventh factor, considering the prejudice to the party objecting to arbitration, weighs slightly in favor of waiver. Cole recognized that, in the context of whether an arbitration clause was waived, "[i]f we define prejudice as 'the inherent unfairness—in terms of delay, expense, or damage to a party's

17

legal position—[then prejudice] occurs when the party's opponent forces it to litigate an issue and later seeks to arbitrate that same issue.'" 215 N.J. at 282 (second alteration in original) (quoting PPG Indus., Inc. v. Webster Auto Parts, Inc., 128 F.3d 103, 107 (2d Cir. 1997)); see also Hopkins, 481 N.J. Super. at 65. Generally, prejudice is not required to prove waiver. Marmo, 478 N.J. Super. at 607.

We again see no reason to disagree with the trial judge's finding that Newport was prejudiced during the almost six years this dispute has been under the Law Division's jurisdiction by expending "substantial efforts" to provide discovery under the belief that the case would be tried before a jury as ASIC demanded. Newport's legal position may be compromised because it prepared its discovery strategy thinking the case would go before a jury. And ASIC obtained discovery it may not have been entitled to had it sought arbitration earlier in the litigation. We agree with Newport that "abandoning this litigation to compel arbitration after such a long delay would deprive [it] of the benefit of its bargain under the Policy." Accordingly, we do not embrace ASIC's argument that Newport will sustain "no prejudice" if the arbitration clause is enforced.

In sum, based on our de novo analysis of the Cole factors, we conclude ASIC's litigation conduct "was inconsistent with [its] purported right to arbitrate

the dispute with plaintiff." <u>Hopkins</u>, 481 N.J. Super. at 66. The trial judge's order will not be disturbed.

III.

ASIC also appeals the trial judge's determination that the arbitration clauses in the Policy and Umbrella Policy are permissive and not mandatory. Because we conclude that ASIC waived its contractual rights to arbitration, we need not address this issue.

To the extent we have not addressed a particular argument, it is because either our disposition makes it unnecessary, or the argument is without sufficient merit to warrant discussion in a written opinion. <u>R.</u> 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division

A-0295-24