PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 24-3025
_____

DAWN VALLI; ANTON S. DUBINSKY, on behalf of
herself and all others similarly situated,

v.

AVIS BUDGET GROUP INC, A Delaware Corporation;
AVIS RENT A CAR SYSTEM, LLC; AVIS BUDGET CAR
RENTAL LLC; BUDGET RENT A CAR SYSTEM, INC.,
Appellants
_____

On Appeal from the United States District Court
for the District of New Jersey
District Court No. 2:14-cv-06072
Magistrate Judge: Honorable James B. Clark III.
_____

Argued September 16, 2025

Before: RESTREPO, McKEE, and SMITH, *Circuit Judges*

(Filed: December 16, 2025)

Ted A. Hages
Jason E. Hazlewood
James C. Martin [ARGUED]
Colin E. Wrabley
Reed Smith
225 Fifth Avenue, Suite 1200
Pittsburgh, PA 15222
                *Counsel for Appellants*

William J. Pinilis [ARGUED]
Kaplan Fox & Kilsheimer
160 Morris Street
Morristown, New Jersey 07960

Joel B. Strauss
Kaplan Fox & Kilsheimer
800 Third Avenue, 38th Floor
New York, NY 10022
                *Counsel for Appellees*

———————————————

OPINION OF THE COURT
———————————————

SMITH, *Circuit Judge.*

This appeal presents a narrow question: did Avis Budget Group, Inc. (and related entities, collectively "Avis") waive, through conduct in litigation, its contractual right to

2

compel arbitration of putative class members' claims? The District Court held that it did. We disagree. Avis's actions and inaction at times did not evince a preference for litigation over arbitration. We therefore will vacate the District Court's order denying Avis's motion to compel arbitration and remand for the District Court to address enforceability questions it did not reach when denying the motion.

**I.**

In June 2014, Dawn Valli rented a car from Avis Budget Group.[1] The rental agreement she signed obligated her to pay any fines for traffic violations incurred during the car's rental period, plus a "reasonable administrative fee." JA59. After a traffic-infraction camera purportedly detected the vehicle speeding while operating in Washington, D.C., the District of Columbia mailed a "Notice of Infraction" to Avis as the vehicle's registered owner. Avis paid the ticket, notified Ms. Valli that the company had done so, and demanded reimbursement of the $150 fine and a $30 administrative fee.

---

[1] Avis Budget Group operates multiple brands in the car rental sector, including "Avis" and "Budget." JA57–58. Avis is a premium car rental service while, Budget—as its name suggests—targets "leisure travelers looking for a bargain." *Who We Are,* Avis Budget Group, https://wordpress.uat.avisbudget.com/about-us/ (last visited Oct. 30, 2025). Avis Rent A Car System, LLC, and Budget Rent A Car System, Inc. are both wholly owned subsidiaries of Avis Budget Car Rental, LLC, which is itself a subsidiary of Avis Budget Group, Inc.

The notification also warned that Avis would charge $180 to Ms. Valli's credit card if she did not make timely payment.

Ms. Valli filed this putative class action in September 2014 in the District of New Jersey on behalf of all persons who:

> (a) rented a motor vehicle from [Avis], (b) were issued a fine, penalty, and/or court costs for parking, traffic, toll, or other violation, and (c) on whose behalf [Avis] (i) paid the Fines prior to giving the Class notice of the alleged Fine or (ii) collected from the Class an administrative and/or handling fee[.]

JA67. The complaint did not delineate the class period, but instead, defined it only as "the limitations period applicable to this action." *Id*. The complaint went on to allege, among other things, that Avis deprived renters of an opportunity to contest the traffic violations by paying the fines (thereby admitting liability) before notifying renters of the infractions. It also alleged that Avis and a separate defendant—American Traffic Solutions Processing Services ("ATS")—had a contractual relationship whereby ATS processed and administered the payment of fines incurred by Avis's customers during their rental periods. The complaint asserted state-law claims which included violations of the New Jersey Consumer Fraud Act[2] and unjust enrichment, and it sought damages and equitable relief.

---

[2] N.J. Stat. Ann. § 56:8-1–232 (West).

In December 2014, Avis moved to dismiss the complaint for failure to state a claim. Shortly thereafter, and with Avis's consent, Ms. Valli filed an amended complaint (First Amended Complaint, "FAC"). In March 2015, Avis moved to dismiss the FAC, again for failure to state a claim.

The inflection point for this appeal occurred on April 1, 2016, when Avis updated its terms and conditions to include the following arbitration provision:

> **ARBITRATION**. . . . Dispute Resolution[:] . . . Except as otherwise provided below, in the event of a dispute that cannot be resolved informally through the pre-dispute resolution procedure, all disputes between you and Avis arising out of, relating to or in connection with your rental of a car from Avis and these Terms and Conditions shall be exclusively settled through binding arbitration through the American Arbitration Association ("AAA") pursuant to the AAA's then-current rules for commercial arbitration . . . **YOU AND AVIS AGREE THATANY [SIC] SUCH ARBITRATION SHALL BE CONDUCTED ON AN INDIVIDUAL BASIS AND NOT IN A CLASS, CONSOLIDATED OR REPRESENTATIVE ACTION**. Notwithstanding any provision in these Terms and Conditions to the contrary, if the class-action waiver in the prior sentence is deemed invalid or unenforceable, neither you nor we are entitled to arbitration . . . This arbitration agreement is

5

subject to the Federal Arbitration Act . . . Disputes and claims that are within the scope of a small claims court's authority, as well as disputes and claims regarding personal injury and/or damage to or loss of a car related to your Avis rental, are exempt from the foregoing dispute resolution provision.

JA11–12.[3] Because the amendment applied only prospectively, it did not implicate Ms. Valli's 2014 rental. On April 12, 2016, the District Court administratively terminated Avis's Motion to Dismiss pending jurisdictional discovery related to ATS. On August 18, 2016, after the parties had stipulated to dismiss ATS, Avis filed a renewed motion to dismiss that did not mention the new arbitration provision and again challenged the merits of Ms. Valli's claims. The District Court denied that motion on May 10, 2017, and fact discovery commenced five days later.

On May 25, 2017, Avis answered the FAC. Among the 38 affirmative defenses that Avis pled, the answer stated these: (1) "Plaintiff's claims are barred to the extent they seek relief prohibited by the arbitration clause in the parties' agreement(s)"; and (2) "Plaintiff's claims are barred to the extent they seek relief prohibited by the class action waiver clause in the parties' agreement(s)." JA430.

---

[3] The contract covering Budget-brand terms and conditions was also amended to contain identical language.

6

In June 2018, Avis agreed to allow Ms. Valli to file a Second Amended Complaint ("SAC"). The SAC added Anton Dubinsky—a Budget brand renter—as a named Plaintiff and added additional Defendants who are part of the Avis Budget Group corporate family. Mr. Dubinsky's 2014 rental agreement likewise predated the arbitration provision. Notably, the SAC retained the same proposed class definition and material allegations as the FAC. Avis again invoked the arbitration and class-waiver provisions in its answer, and the parties resumed discovery.

In July 2019, Plaintiffs moved to certify the following class under Federal Rule of Civil Procedure 23(b)(3)[4]:

> All United States residents who rented an Avis or Budget brand vehicle during the Class Period and whose rented vehicle was the subject of an alleged parking, traffic, toll or other violation,

---

[4] Certification under Rule 23(b)(3) requires, first, that a proposed class satisfy the threshold requirements of Rule 23(a): "numerosity, commonality, typicality and adequate representation." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011); Fed. R. Civ. P. 23(a). Once those prerequisites are satisfied, Rule 23(b)(3) further requires that (1) "questions of law or fact common to class members predominate over any questions affecting only individual members" and (2) "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

where: (1) the ticket issuing authority sent notice of the ticket directly to ABG [*i.e.*, Avis Budget Group]; (2) ABG or its agent paid the fine and/or court costs associated with the alleged violation; and (3) ABG charged the vehicle renter for such fine, penalty and court costs, and/or an associated administrative fee.

JA522. For the first time, Plaintiffs defined the class period as "Sept[ember] 30, 2008 through the Present." JA523. In opposing class certification, Avis argued, *inter alia*, that many putative class members were subject to the arbitration and class-waiver provisions. Thus, Avis contended that the named Plaintiffs—who were not subject to such provisions—could not "adequately represent the interests of renters who must arbitrate their claims" and their claims were "not typical of these would-be class members[.]" JA537. Avis also argued that, at the motion to dismiss stage, "arguments about the enforceability of arbitration clauses were not ripe" because "it was unclear how Plaintiffs would define the class and, thus, speculative as to whether the class included renters who agreed to arbitrate their claims." *Id.*

Over the next two years, the District Court administratively terminated the certification motion several times, only to reinstate it while discovery continued and unsuccessful attempts at mediation were undertaken. The District Court eventually heard oral argument on the certification motion in April 2021. There, Avis argued that numerous putative class members had waived their right to participate in this class action via the arbitration provision in

8

their rental agreements. Plaintiffs countered that Avis waived the right to rely upon the arbitration clauses by not having raised the issue earlier and instead choosing to participate in the litigation. After an unsuccessful attempt at private mediation, the District Court ordered supplemental briefing on class certification.

In its supplemental brief, filed September 15, 2022, Avis reiterated that nearly half of the members of the putative class had signed arbitration agreements, and that named Plaintiffs could not "fairly represent the interests of [those] class members . . ." JA682. Avis filed another brief approximately two weeks later, arguing that it had preserved its right to assert the arbitration provision by raising arbitration as an affirmative defense in its answers to both the FAC and SAC. Avis also emphasized that Plaintiffs' July 2019 class certification motion was the first time they identified arbitration-bound renters as putative class members.

In October 2023, the District Court (Clark, M.J.)[5] denied nationwide certification but certified the following Rule 23(b)(3) subclass "pursuant to Rule 23(c)(4)(B)"[6]:

---

[5] In February 2023, the parties consented to the jurisdiction of Magistrate Judge James B. Clark III, who presided over this matter thereafter.

[6] JA776. To avoid confusion, we note that the quoted citation is from an earlier version of Rule 23, not applicable at that time. "After the 2007 amendments to Rule 23, the former Rule 23(c)(4)(B) is now Rule 23(c)(5)." *Harris v. Med. Transp.*

9

> All Avis Preferred and Budget Fastbreak members with a United States address who rented an Avis or Budget brand vehicle during the Class Period [September 30, 2008 through the present] and whose rented vehicle was the subject of an alleged parking, traffic, toll or other violation, where: (1) the ticket issuing authority sent notice of the ticket directly to ABG; (2) ABG or its agent paid the fine and/or court costs associated with the alleged violation; and (3) ABG charged the vehicle renter for such fine, penalty and court costs, and/or associated administrative fee.

JA803–804. In its Rule 23(a)(3) typicality analysis, the District Court—citing our decision in *White v. Samsung Electronics America, Inc.*, 61 F.4th 334, 341 (3d Cir. 2023)—concluded that Avis had waived its right to arbitration by "engag[ing] fully in the litigation for five years without ever moving to arbitrate." JA799.

Avis filed a Rule 23(f)[7] petition with this court asserting that the presence of arbitration and class-action waiver clauses

---

*Mgmt., Inc.*, 77 F.4th 746, 757 n.1 (D.C. Cir. 2023); *see also* Fed. R. Civ. P. 23(c)(5) ("When appropriate, a class may be divided into subclasses that are each treated as a class under this rule.").

[7] "A court of appeals may permit an appeal from an order granting or denying class-action certification under this rule . . ." Fed. R. Civ. P. 23(f).

10

in certain class members' contracts "created insurmountable typicality and predominance problems for the putative class." No. 23-8047, ECF No. 1. A motions panel denied the 23(f) petition in November 2023.

Following a status conference, the District Court set a briefing schedule for partial summary judgment and "Defendants['] . . . motion regarding arbitrability." JA807. In accordance with that schedule, Avis moved to compel bilateral (i.e. individual) arbitration in February 2024. It disputed that it had waived arbitration, arguing that any earlier motion to compel directed at unnamed class members would have been futile before certification of a class. On September 30, 2024, the District Court denied both Avis's motion to compel and Plaintiffs' partial summary judgment motion, again concluding that Avis's pre-certification activity—including its 2016 motion to dismiss and participation in discovery, conferences, and mediation—demonstrated waiver. The District Court also faulted Avis for failing to "formally seek to enforce arbitration" until after a class had been certified. JA17. Avis timely appealed.

## II.

The District Court had jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2),[8] and

---

[8] To meet CAFA's jurisdictional requirements, Plaintiffs averred that: (1) the matter in controversy exceeds $5,000,000; and (2) some members of the class are citizens of different states than the Defendants.

11

supplemental jurisdiction over Plaintiffs' state-law claims pursuant to 28 U.S.C. § 1367. Magistrate Judge Clark had jurisdiction to conduct these proceedings pursuant to 28 U.S.C. § 636(c)(1) and Fed. R. Civ. P. 73. We have jurisdiction under 9 U.S.C. § 16(a)(1)(B) because the District Court's order denied Avis's motion to compel arbitration pursuant to 9 U.S.C. § 4.

Our review is plenary over a district court's determination as to "whether a party, through its litigation conduct, waived its right to compel arbitration." *Gray Holdco, Inc. v. Cassady*, 654 F.3d 444, 450–51 (3d Cir. 2011) (internal quotation marks and citation omitted). "To the extent that a district court makes factual findings in making [that] determination[], we review its findings for clear error." *Id.* at 451.

## III.

Central to this case is the interplay between two familiar doctrines: waiver and futility. Waiver is the "intentional relinquishment or abandonment of a known right." *Morgan v. Sundance, Inc.,* 596 U.S. 411, 417 (2022) (citation omitted); *see also White,* 61 F.4th at 339 ("[W]aiver occurs where a party has 'intentional[lly] relinquish[ed] or abandon[ed] . . . a known right.'" (alterations in original) (quoting *Morgan,* 596 U.S. at 417)). As with any contract right, "the right to arbitrate may be waived either explicitly or through an implicit course of conduct." *Toddle Inn Franchising, LLC v. KPJ Assocs., LLC,* 8 F.4th 56, 64 (1st Cir. 2021); *see also Al-Nahhas v. 777 Partners LLC,* 129 F.4th 418, 426 (7th Cir. 2025) ("In the

12

arbitration context, waiver encompasses both intentional relinquishments and implicit abandonments of the right to arbitrate." (internal quotation marks and citation omitted)). In the absence of an explicit waiver, we conduct an implied-waiver analysis, which looks to whether the right-holder "acted inconsistently with an intent to assert its right to arbitrate," and thus, "evince[d] a preference for litigation over arbitration." *White,* 61 F.4th at 340.This inquiry is informed by the "circumstances and context of each case." *Id*. at 339 (quoting *Gray Holdco*, 654 F.3d at 451).

The question of futility may accompany an examination into whether waiver has occurred. Futility "can excuse the delayed invocation of the right to compel arbitration." *Chassen v. Fid. Nat'l Fin., Inc.*, 836 F.3d 291, 293 (3d Cir. 2016). Put simply, "if an earlier attempt to assert the defense of arbitration would have been futile," the failure to take this futile step "is not inconsistent with that defense." *Id*. at 296.[9] *Chassen* illustrates the point. There, the named plaintiffs were New Jersey real-estate purchasers whose contracts with the defendants contained arbitration clauses. *Id.* at 293–94. The defendants moved to dismiss and answered plaintiffs' complaint but did not move to compel bilateral arbitration because then-controlling New Jersey law barred courts from

---

[9] "[F]utility does not mean something is *absolutely* impossible; nor does it mean something is merely improbable." *Id*. at 299. Rather, the assertion of a right is "futile" when it is "almost certain to fail." *Id*.

13

compelling such arbitration in adhesion contracts. *Id*. Two years later, while the case was still pending in the district court, the Supreme Court held that the Federal Arbitration Act ("FAA") preempted those state-law barriers. *Id.* at 295 (*citing AT&T Mobility LLC v. Concepcion,* 563 U.S. 333, 352 (2011)). The defendants then moved to compel arbitration. *Id*. On appeal, we held that despite years of litigation, they had not waived their right to arbitrate. *Id.* We "disregard[ed] Defendants' pre-*Concepcion* delay" concluding that any pre-*Concepcion* motion "was almost certain to fail." *Id.* at 302. We therefore confined our analysis to the period after *Concepcion* and before the filing of the motion to compel. *Id.* at 303.

The parties dispute *Chassen*'s reach in the case before us. Avis contends *Chassen* is dispositive, foreclosing any consideration of its pre-certification conduct because it could not enforce its arbitration right until the District Court had certified a class containing arbitration-bound members. See Op. Br. at 19 ("*Chassen* is the beginning and the end of this appeal."). Plaintiffs respond that *Chassen* was undermined by *Morgan* and, at all events, is distinguishable in that the futility in *Chassen* stemmed from controlling law, whereas here it turned on party status. See Resp. Br. at 19–20; ECF No. 50, Transcript of Oral Argument at 17–18. This dispute tees up the central legal question necessary to the resolution of this appeal: may pre-certification conduct be considered in analyzing whether a party waived its right to arbitration as to unnamed members of a putative class, when no motion to compel could have been granted? We answer in the affirmative.

14

**A.**

We begin by confirming that *Morgan* does not displace *Chassen*'s futility principle. A brief recap of the evolution of our waiver doctrine sets the stage.

Before 2022, our Circuit—like many others[10]—treated "prejudice [a]s the touchstone for determining whether the right to arbitrate has been waived[.]" *Hoxworth v. Blinder, Robinson & Co.*, 980 F.2d 912, 925 (3d Cir. 1992). We asked whether the non-movant could "demonstrate any prejudice from the procedural matters [the moving party] raised before moving to arbitrate[,]" *id*, and justified that approach by invoking the FAA's supposed "strong preference for arbitration." *Painewebber Inc. v. Faragalli*, 61 F.3d 1063, 1068 (3d Cir. 1995). The Supreme Court rejected that framework in *Morgan,* holding that the FAA's "policy favoring arbitration" does not authorize federal courts to "devise novel rules to favor arbitration over litigation." 596 U.S. at 418. That "policy," the Court explained, simply places arbitration agreements "upon the same footing as other contracts." *Id.* (quoting *Granite Rock Co. v. Teamsters*, 561 U.S. 287, 302 (2010)). Thus, courts may

---

[10] *See, e.g., Joca-Roca Real Est., LLC v. Brennan*, 772 F.3d 945 (1st Cir. 2014); *Erdman Co. v. Phoenix Land & Acquisition, LLC*, 650 F.3d 1115 (8th Cir. 2011); *O.J. Distrib., Inc. v. Hornell Brewing Co.*, 340 F.3d 345 (6th Cir. 2003); *S & H Contractors, Inc. v. A.J. Taft Coal Co.,* 906 F.2d 1507 (11th Cir. 1990); *Miller Brewing Co. v. Fort Worth Distrib. Co.,* 781 F.2d 494 (5th Cir. 1986).

not "condition a waiver of the right to arbitrate on a showing of prejudice." *Id*. at 417. Instead—just as in any waiver context—courts must "focus on [the movant's] conduct" and ask whether the movant "knowingly relinquish[ed] the right to arbitrate by acting inconsistently with that right[.]" *Id*. at 419.

*Chassen* sits comfortably within the bounds of that directive. *Morgan* eliminated any prejudice requirement and forbade arbitration-specific procedural rules. But it said nothing about futility. Indeed, futility is not an arbitration-favoring gloss. It is a trans-substantive principle long recognized across doctrines—an exception, for example, "to both ripeness and administrative exhaustion"—and there is "no reason why this logic would not extend" to waiver. *Chassen*, 836 F.3d at 296.

To be sure, *Chassen* recited our then-prevailing, prejudice-based framework and cited *Hoxworth* and its progeny. 836 F.3d at 295. But *Chassen* also expressly distinguished *Hoxworth*, emphasizing that the case "was simply not a futility case," and that "the standard waiver analysis"—with its prejudice factors—was "ill suited" where the delay under review stemmed from legal futility. *Id.* at 295–96. In short, our decision in *Chassen* to "disregard" and "fully excuse[]" the defendant's pre-*Concepcion* delay had nothing to do with prejudice. *Id*. at 302–03.[11] True, *Chassen* went on to

---

[11] *Chassen* also referenced the FAA's supposed "liberal federal policy favoring arbitration." *Id*. at 303 n. 14 (quoting *Concepcion*, 563 U.S. at 339). However, it did so in a footnote merely to underscore that the decision "to excuse the delay and

16

apply a prejudice inquiry to the three-month, post-futility gap between *Concepcion* and the defendant's motion to compel. *Id.* at 303. And to that limited extent, *Morgan* abrogates *Chassen* in part. It nonetheless leaves *Chassen*'s core holding intact: where an earlier motion to compel would have been "almost certain to fail," the failure to file such a motion is not inconsistent with the right to arbitrate. *Id*. at 296–97.

**B.**

The harder inquiry is how we should apply *Chassen* here. Avis urges that we do "not need to look beyond *Chassen* to reverse." Op. Br. at 29. But that would be too facile a response. There is a subtle, but fundamental, distinction that separates this case from *Chassen*. True, in both cases a litigant could not compel arbitration until a triggering event took place—*Concepcion* there; class certification here.[12] But in

---

its resulting expense to Plaintiffs" was consistent with that policy. *Id*. Importantly, our analysis in *Chassen* did not turn on that policy.

[12] True, in the context of preclusion, we have said that, for class actions seeking predominantly damages, putative class members do not attain "party" status "until the time to opt out has elapsed." *N. Sound Cap. LLC v. Merck & Co., Inc.*, 938 F.3d 482, 492-93 (3d Cir. 2019). But unnamed class members "may be parties for some purposes and not for others" because the label "party" is merely "a conclusion about the applicability of various procedural rules that may differ based on context." *Devlin v. Scardelletti*, 536 U.S. 1, 9-10 (2002). The constitutional due process protections of notice and the

17

*Chassen*, futility existed because then-controlling state law barred the motion—until an exogenous shift in controlling legal authority removed that barrier. Here, by contrast, futility persisted only until a *foreseeable* (though not inevitable) procedural event—class certification—brought arbitration-bound car renters within the court's reach. Avis could anticipate that if a class including post-April 2016 renters were certified, a motion to compel would then be viable.[13] Put

opportunity to opt out, which inform preclusion, do not control when unnamed class members become subject to an order compelling arbitration. That turns on when absent class members come within the court's power, which occurs upon class certification. *See, e.g., Molock v. Whole Foods Mkt. Grp., Inc.*, 952 F.3d 293, 298 (D.C. Cir. 2020) ("It is class certification that brings unnamed class members into the action[.]"); *In re Checking Acct. Overdraft Litig*., 780 F.3d 1031, 1037 (11th Cir. 2015) ("Certification of a class is the critical act which reifies the unnamed class members and, critically, renders them subject to the court's power."); *Cruson v. Jackson Nat'l Life Ins. Co.*, 954 F.3d 240, 250 (5th Cir. 2020) ("What brings putative class members before the court is certification[.]" (citing *In re Checking Acc.* 780 F.3d at 1037)). Accordingly, for our purposes the operative trigger is certification, not the expiration of the opt-out period.

[13] Indeed, Avis had anticipated this eventuality. It raised arbitration as an affirmative defense on two occasions, well before class certification was at issue. Such action demonstrated its recognition of the likelihood that its arbitration rights might eventually become enforceable.

18

plainly, the defendants in *Chassen* did not "know" they had a right to compel arbitration until *Concepcion* changed the law, whereas Avis "knew" of its prospective right even if it lacked a present ability to enforce it pre-certification.

That distinction matters because waiver is the "intentional relinquishment or abandonment of a *known* right," not merely of a presently enforceable one. *Morgan,* 596 U.S. at 417 (emphasis added). Our sister circuits agree that knowledge of a right for waiver purposes does not hinge on its immediate enforceability. *See Hill v. Xerox Bus. Servs., LLC*, 59 F.4th 457, 469 (9th Cir. 2023) ("[W]e have never suggested that for waiver purposes, knowledge of an existing right to arbitrate requires a present ability to move to enforce an arbitration agreement."); *Degidio v. Crazy Horse Saloon & Rest. Inc,* 880 F.3d 135, 141 (4th Cir. 2018) (holding that, in an FLSA suit, a defendant who was "well aware that [certain arbitration] agreements were relevant to the ongoing litigation" waived its right to enforce those agreements against future opt-in plaintiffs even before "it could [] move to compel arbitration against [those] parties"); *In re Cox Enters., Inc. Set-Top Cable Television Box Antitrust Litig.,* 790 F.3d 1112, 1119 (10th Cir. 2015) (rejecting the notion that the "right to arbitrate against [unnamed] class members could not have become known until [a] class was certified"). And in *White* we instructed that the waiver analysis is triggered once a defendant is on notice that a claim "*could* be arbitrable," not solely when the right to compel is certain. 61 F.4th at 340 (emphasis added).

Functionally, insulating a right from waiver until it becomes enforceable would reward outcome-oriented

19

gamesmanship and undermine the very purpose of waiver in this setting—to prevent litigants from "us[ing] arbitration to manipulate the legal process and in that process waste scarce judicial resources." *Gray Holdco*, 654 F.3d at 453–54; *see also Gutierrez v. Wells Fargo Bank, NA*, 889 F.3d 1230, 1236 (11th Cir. 2018) ("[T]he purpose of the waiver doctrine is to prevent litigants from abusing the judicial process."). A defendant, knowing it intends to seek arbitration, could litigate aggressively for merits advantage—even *disclaim* any intent to arbitrate—and then pivot to arbitration the moment it becomes advantageous to do so, all without consequence. *Chassen* cannot be read to bless such a cost-free about-face.

Of course, *Chassen'*s futility principle excuses the failure to file a formal motion to compel as to unnamed class members prior to certification because a district court lacks jurisdiction to rule on such a motion.[14] *See, e.g., N. Sound Cap.,* at 492 ("It is axiomatic that an unnamed class member is not 'a party to the class-action litigation before the class is certified.'" (quoting *Smith v. Bayer Corp.,* 564 U.S. 299, 313 (2011))); *In re Checking Acct.,* 780 F.3d at 1039 (explaining that "the District Court lacked jurisdiction to rule on the arbitration obligations of [] unnamed putative class members" prior to class certification). But where a right's enforceability turns on a foreseeable procedural event—such as class certification—

---

[14] Plaintiffs conceded as much at oral argument. *See* ECF No. 50, Transcript of Oral Argument at 16–17 (acknowledging that it would have been futile for Avis to seek to compel arbitration prior to class certification).

20

that right may still be "known" for waiver purposes before it becomes enforceable. Accordingly, pre-event conduct may still inform whether a party intentionally elected to litigate rather than arbitrate.

That conclusion leads to a practical question: What must a defendant do to preserve future arbitration rights it cannot presently enforce? Several of our sister circuits have indicated that, in that situation, a defendant must provide clear, reasonably prompt record notice of its intent to compel arbitration. *See Hill,* 59 F.4th at 481–82 (Ninth Circuit instructing that "had [defendant] wanted to avoid a waiver of [its] arbitration rights, it was responsible for concretely signaling its intention to raise [those rights] to the court—an act that would not have been futile because it would have put all relevant parties on notice of its claimed right to arbitrate"); *Degidio,* 880 F.3d at 141 (Fourth Circuit explaining that the defendant "did not need to wait to inform the district court about its arbitration strategy until [plaintiffs] who had signed arbitration agreements joined the case," as it "could instead have told the district court that it intended to compel arbitration with respect to [those plaintiffs]"); *Gutierrez,* 889 F.3d at 1237 (Eleventh Circuit explaining that "fair notice at a relatively early stage of litigation is a primary factor in considering whether a party has acted consistently with its arbitration rights"); *In re Cox,* 790 F.3d at 1119 (Tenth Circuit emphasizing that "[t]he [district] court may not have been able to *compel* arbitration of absent class members" prior to certification, "but [the defendant's] *assertion* or mention of its right at that point would have fundamentally changed the

21

course of the litigation" and "prevented . . . improper gamesmanship").

That rule makes sense. Waiver is the "*intentional* relinquishment or abandonment of a known right." *Morgan,* 596 U.S. at 417 (emphasis added). In the explicit waiver context, a party outright declares that it will forgo arbitration and leaves no doubt as to its intent. *See, e.g., Brickstructures, Inc. v. Coaster Dynamix, Inc.,* 952 F.3d 887, 891 (7th Cir. 2020) ("The [waiver] analysis can be short when the basis of the waiver is an express abandonment of the right. In most situations, 'I waive arbitration' answers the question."); *Menorah Ins. Co., Ltd. v. INX Reinsurance Corp.,* 72 F.3d 218, 221 (1st Cir. 1995) (finding explicit waiver where a defendant "expressly declined" to arbitrate and "said it was both unwilling and unable to participate in [future] arbitration").

By contrast, a finding of implied waiver rests on an *inference* drawn from litigation conduct. *See Palcko v. Airborne Express, Inc.,* 372 F.3d 588, 598 (3d Cir. 2004) ("[W]aiver cannot be *inferred* from the facts of this case[.]" (emphasis added)); *Borror Prop. Mgmt., LLC v. Oro Karric N., LLC,* 979 F.3d 491, 497 (6th Cir. 2020) (for implied waiver "we must determine whether we should *infer* a waiver based on a party's actions (or inactions)"). When a party litigates in ways that appear to be inconsistent with a desire to arbitrate, a court may *infer* from that conduct an intent to forgo arbitration. But that inference can be reasonably drawn only when there at least appears to be uncertainty as to what the party actually intends. When the right-holder consistently and explicitly states on the record that it *does* intend to invoke arbitration, there is no

22

uncertainty to resolve by inference and the predicate for implied waiver largely collapses.[15]

Accordingly, where a party's litigation activity might otherwise suggest that it does not intend to pursue its arbitration rights, that party "ha[s] an obligation to set the record straight by dispelling th[at] impression." *Hill*, 59 F.4th at 482 n.26.[16] Doing so prevents parties from "manipulat[ing]

---

[15] To be clear, an on-the-record reservation is not a get out of jail free card. Courts may still find waiver where, despite such reservation, a party's conduct is so inconsistent with an intent to arbitrate that it evinces an intentional relinquishment. A party may not "bank" arbitration as a fallback while litigating indefinitely on the merits. *See Gray Holdco*, 654 F.3d at 453–54 (warning against using arbitration to "manipulate the legal process"). Nominal reservation cannot sanitize conduct that, viewed in context, amounts to an election to remain in litigation.

[16] To be sure, advance notice of an intent to arbitrate might not be called for where a party has not otherwise acted inconsistently with that intent. To impose such a requirement would run the risk of conflating the doctrine of forfeiture, which "is the failure to make the timely assertion of a right," with waiver, the latter being the "intentional relinquishment or abandonment of a known right." *United States v. Olano*, 507 U.S. 725, 733 (1993); *see also Gray Holdco*, 654 F.3d at 455 ("[T]he length of the time between when a party initiates or first participates in litigation and when it seeks to enforce an arbitration clause is not dispositive in a waiver inquiry[.]").

the legal process." *Gray Holdco,* 654 F.3d at 453–54. It also avoids unnecessary judicial involvement and review, thereby effectuating "the purpose behind arbitration itself . . . to streamline the proceedings, lower costs, and conserve private and judicial resources[.]" *Nino v. Jewelry Exch., Inc.,* 609 F.3d 191, 209 (3d Cir. 2010); *see also Concepcion,* 563 U.S. at 348 (noting that the "principal advantage of arbitration" is "informality" in order to achieve "lower costs, greater efficiency and speed").[17]

We therefore hold that when enforceability of a right to arbitration hinges on the occurrence of a foreseeable procedural event—in this case, certification of a class—futility excuses only the failure to seek judicial action which the court could not then grant. It does not remove all pre-event conduct from the waiver inquiry. In that setting, a party must give clear, reasonably prompt record notice of its intent to exercise its arbitration right and then promptly move to do so once the event occurs.

---

Nonetheless, this will rarely, if ever, be the case in putative class actions where class certification issues frequently "overlap with the merits of the plaintiff's underlying claim." *Comcast Corp. v. Behrend,* 569 U.S. 27, 33–34 (2013).

[17] For example, when "the court knows a party has potential arbitration rights that could throw the case out of court, it can limit the scope of early discovery" to avoid needless expense if arbitration later governs. *Gutierrez,* 889 F.3d at 1236.

**IV.**

We now apply that framework to the matter before us. We first determine the relevant window for our inquiry to be from April 1, 2016—when Avis first adopted the class-waiver and arbitration provisions—through February 2, 2024—when Avis formally moved to compel arbitration. In examining that frame of time, we ask whether Avis's conduct—or failure to take action—amounts to an intentional relinquishment of its right to arbitrate. We conclude that it does not.

Avis incorporated the operative arbitration and class-waiver language into its rental terms on April 1, 2016. Before then, there was no contractual source of any arbitration right to "know," assert, or relinquish because the provision creating that right did not yet exist. Our inquiry therefore begins on April 1, 2016, looking to whether Avis "evince[d] a preference for litigation over arbitration" such that it knowingly and intentionally relinquished its right to compel arbitration. *White*, 61 F.4th at 340.

After the arbitration clause took effect in 2016, unnamed putative class members remained outside the District Court's authority until it certified a class on October 10, 2023. Accordingly, any motion to compel directed at them during that period would have been futile.[18] But, as explained, futility does

---

[18] To the extent the District Court faulted Avis for not formally moving to compel arbitration prior to certification of a class, that was legal error. *See* JA19 (stating that the fact that Avis's "formal assertion of their right to arbitration has come after the

25

not excuse other pre-certification conduct that was inconsistent with an intent to arbitrate. The District Court identified two categories of such conduct: (1) Avis's August 18, 2016 motion to dismiss, which did not mention arbitration and (2) Avis's extensive participation in discovery and mediation. JA17. We address each in turn.

Seeking merits dismissal can, in some settings, support a finding of waiver.[19] *See e.g., White,* 61 F.4th at 340 (defendant's actions, including "pursu[ing] motions to dismiss on the merits . . . demonstrate[d] a waiver of its alleged right to arbitrate"). But our analysis is contextual—it must be informed by the "circumstances and context of each case," not controlled by bright-line rules. *Id.* at 339 (citation omitted). Here, Avis set course almost immediately after the District Court denied its motion to dismiss. Fifteen days later, in its answer to the FAC, Avis pled arbitration as an affirmative defense and reiterated that position throughout the course of this litigation. Given that prompt clarification, its motion to dismiss—filed just months after the arbitration clause took effect—does not demonstrate intentional relinquishment. *See, e.g., Armstrong v. Michaels Stores, Inc.,* 59 F.4th 1011, 1015 (9th Cir. 2023) (emphasizing that the defendant "did not make an intentional decision" to

---

passage of extensive time and litigation . . . evinces a preference for litigation").

[19] *But cf. White,* 61 F.4th at 340 ("[M]otions to dismiss will not always evince an intent to litigate instead of arbitrate[.]" (citing *Palcko*, 372 F.3d at 596-98)).

26

forgo arbitration because it "pleaded arbitration as an affirmative defense" and "repeatedly stated its intent to move to compel arbitration").

Moreover, it was not until over two years later that Plaintiffs, in their class certification motion, even defined the putative class to include post-April 2016 renters—the arbitration-bound cohort of car renters. As Avis explained in opposing class certification, "[a]t the motion to dismiss stage, it was unclear how Plaintiffs would define the class and, thus, speculative as to whether the class included renters who agreed to arbitrate their claims." JA537. So while Avis was certainly aware that the yet-to-be-defined class *could* include arbitration-bound members, the "speculative" nature of the class period at this point weakens any reasonable inference that Avis intended to waive its arbitration rights as to these tentative members when it filed its motion to dismiss.

Plaintiffs next point to discovery and mediation. They emphasize that Avis did not object to any discovery, nor seek to exclude from that process any information concerning arbitration-bound renters. Resp. Br. at 7–8. That may be so. But Plaintiffs identify only a single instance in which Avis produced information not also relevant to other customers who are not subject to arbitration.[20] And critically, Avis never

---

[20] Plaintiffs point to Interrogatory No. 20 served on December 17, 2016, requiring defendants to:

"For each year (or portion thereof) of the Applicable Time Period [defined as, September

27

*sought* discovery specifically targeted at arbitration-bound putative class members. *Cf., Hill,* 59 F.4th at 475 (defendant "explicitly sought extensive discovery as to . . . putative class members" who were subject to arbitration agreements, which "weighs in favor" of waiver).

To be sure, discovery and mediation conduct can support a finding of waiver in the appropriate circumstances. *See, e.g., Nino*, 609 F.3d at 199 (finding that a defendant waived his right to arbitrate where he actively litigated the case for more than 15 months and engaged in "no fewer than ten pretrial conferences" and "extensive discovery"); *Ehleiter v. Grapetree Shores, Inc.,* 482 F.3d 207, 223 (3d Cir. 2007) (finding waiver where the defendant "engaged in extensive discovery" and attempted to "resolve the case in mediation," along with engaging in substantial merits and non-merits motion practice). That said, discovery directed at non-arbitrable claims does not, by itself, waive the right to arbitrate arbitrable claims. *See, e.g., Nesslage v. York Sec., Inc.,* 823 F.2d

---

30 to the Present] identify by Type of Violation, the total dollar amount you charged to, and collected from, Avis Preferred and Budget Fastbreak Customers for fines, penalties and court costs for each Type of Violation and the associated Administrative Fee."

JA961; Resp. Br. at 9. Plaintiffs note that Avis provided the requested information for all customers through August 2, 2019. Resp. Br. at 9.

28

231, 234 (8th Cir. 1987) (declining to find waiver where discovery was "largely limited to . . . claims, which, at the time discovery was being conducted . . . were not arbitrable"); *Nat'l Found. for Cancer Rsch. v. A.G. Edwards & Sons, Inc.,* 821 F.2d 772, 775 (D.C. Cir. 1987) (noting that "[i]t is obviously [a defendant's] right to conduct discovery on any non-arbitrable claims" without risking waiver as to other arbitrable claims). Where both arbitrable and non-arbitrable claims are present, courts "might hesitate to infer" waiver from discovery efforts that might also "be relevant to the non-arbitrable claims." *Nat'l Found. for Cancer Rsch.,* 821 F.2d at 775.

That hesitation is especially apt where, as here, the party has repeatedly put its intent to arbitrate on the record. Indeed, while discovery and mediation proceeded, Avis consistently asserted its prospective arbitration rights in opposing certification. For instance, Avis devoted an entire section of its briefing before the District Court in opposing class certification to arguing that the arbitration and class-waiver provisions created significant issues concerning typicality and adequacy. Avis reaffirmed its stance nearly two years later during oral argument. In that context, Avis's participation in discovery and mediation does not reasonably support an inference that it intended to relinquish its right to arbitrate.

Finally, Avis promptly moved to compel once it was no longer futile to do so. Although about four months passed between certification and Avis's motion, the record shows why this interval was not unreasonable. Thirteen days after it issued its certification order, the District Court held a telephonic status conference and directed Plaintiffs to file a letter brief regarding

29

their request to file a motion for partial summary judgment. That order also stayed discovery. In its responsive brief, and "in accordance with [the Court's] verbal instructions during the teleconference," Avis "focus[ed] solely on the untimeliness of Plaintiffs' proposed motion rather than the numerous defenses that [Avis] would have to overcome that motion." DCD No. 236. Avis's Rule 23(f) petition—arguing, *inter alia*, that it had not waived its right to compel arbitration—remained pending. So any motions relating to arbitration would have been premature. But ten days after the parties notified the District Court that this court had denied that petition, the Court scheduled another status conference for December 14, 2023 then set a deadline for Avis's motion to compel. Avis met that deadline. That sequence of events does not suggest intentional relinquishment.

In sum, and viewed in context, Avis's conduct does not "evince a preference for litigation over arbitration." *White*, 61 F.4th at 340. We therefore will vacate the District Court's order denying Avis's motion to compel. As explained below, however, we stop short of directing that Plaintiffs be compelled to arbitrate. Enforceability issues not reached by the District Court remain to be addressed on remand.

**V.**

From waiver, we move to Plaintiffs' alternative grounds for affirmance. First, they claim that this dispute falls outside the scope of the arbitration provision because the agreement's small-claims carve-out applies. Resp. Br. at 21–26. Second, they contend the arbitration provision is invalid because Avis

30

added it to its terms while this litigation was pending. *Id.* at 27–30. The first argument fails on the merits. The second—raised for the first time on appeal—has been forfeited. However, because the District Court ruled solely on waiver, we will remand so that it may address enforceability in the first instance.

**A.**

A motion to compel arbitration requires courts to consider two questions: "(1) whether a valid agreement to arbitrate exists and (2) whether the particular dispute falls within the scope of that agreement." *Trippe Mfg. Co. v. Niles Audio Corp.*, 401 F.3d 529, 532 (3d Cir. 2005). Regarding the second requirement, Plaintiffs contend that "the arbitration provision Avis . . . now seeks to enforce, by its very terms, exempts Class Members from arbitration." Resp. Br. at 3. They point to the carve-out for "[d]isputes and claims that are within the scope of a small claims court's authority." JA924. Because each class member's individual claim "generally amount[s] to no more than a few hundred dollars," Plaintiffs say the small-claims exemption governs. Resp. Br. at 4. Their premise misapprehends the posture of this case.

The class action, of course, is an "exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *United States v. Sanchez-Gomez*, 584 U.S. 381, 387 (2018) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700–01 (1979). This procedural device—which Judge Posner once referred to as

31

"ingenious"[21]—aggregates numerous small claims into a single action, which then "acquires an independent legal status once it is certified under Rule 23." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 75 (2013); *see also Sanchez-Gomez,* 584 U.S. at 387 (noting that class actions "provide[] a procedure by which the court may exercise . . . jurisdiction over the various individual claims in a single proceeding" (quoting *Califano*, 442 U.S. at 700–01)). Indeed, "[o]nce a class has been certified, its members effectively lose nearly all of their litigative individuality." *United States v. Cammarata*, 145 F.4th 345, 372 (3d Cir. 2025); *see also In re Baby Prods. Antitrust Litig.,* 708 F.3d 163, 179 (3d Cir. 2013) (distinguishing between a class action and claims "brought on an individual basis"); *Samuel v. Univ. of Pittsburgh*, 538 F.2d 991, 994 (3d Cir. 1976) (explaining that once a class was decertified, "[t]he members of the class thus were left to pursue their individual claims").

Here, Plaintiffs' operative complaint invokes CAFA, averring that "the matter in controversy exceeds $5,000,000." JA437 (citing 28 U.S.C. § 1332(d)(2)(A)). As pled, this action far exceeds New Jersey's small-claims jurisdictional limit of $5,000. *See* N.J. Ct. R. 6:1-2(a)(2) (defining "[s]mall claims actions" as those where "the amount in dispute . . . does not exceed . . . $5,000"). Unsurprisingly, Plaintiffs fail to cite any authority for their novel theory and district courts have rejected

---

[21] *Eubank v. Pella Corp.,* 753 F.3d 718, 719 (7th Cir. 2014).

materially identical efforts to deploy "small claims" exceptions against aggregated class disputes.[22] We do likewise.

**B.**

Plaintiffs also argue that the arbitration provision is unenforceable because Avis added it while this case was pending—an attempt, they say, to "alter the contours of this litigation." Resp. Br. at 27. That contention is raised for the first time on appeal, so we decline to consider it. *See Holk v. Snapple Beverage Corp.,* 575 F.3d 329, 335 (3d Cir. 2009) (explaining that although we may affirm on alternative grounds, "this rule does not apply to cases in which the party has waived the issue in the district court.");[23] *Cameron v. EMW*

---

[22] *See, e.g.*, *Gadomski v. Wells Fargo Bank N.A.*, 281 F. Supp. 3d 1015, 1021 (E.D. Cal. 2018) ("[T]he Court finds the 'small claims exception' inapplicable to Plaintiff's claims because the potential class of hundreds of thousands of individuals ensures the claims would exceed the jurisdictional limit of California's small claims court."); *Botorff v. Amerco*, No. 2:12-CV-01286, 2012 WL 6628952, at *6 (E.D. Cal. Dec. 19, 2012) (citing CAFA and explaining that "Plaintiff could not have brought her current class action, seeking recovery of damages in excess of $5,000,000 for herself and a putative class, in California's small claims court because the amount of damages Plaintiff is seeking greatly exceeds small claims court's jurisdictional limits").

[23] Although we have often used the term "waiver" in describing arguments raised for the first time on appeal, "this usage of 'waiver' is inconsistent with the waiver-forfeiture distinction

*Women's Surgical Ctr., P.S.C.,* 595 U.S. 267, 275 (2022) ("[I]f a non-jurisdictional argument was not raised below, we generally will not consider it as an alternative ground for affirmance."); *c.f. Mark v. Borough of Hatboro*, 51 F.3d 1137, 1139 n.1 (3d Cir. 1995) ("[W]e can affirm on a ground on which the district court did not rely *but which was raised before it*." (emphasis added)). While we are "slightly less reluctant to bar consideration of a forfeited pure question of law," *Barna v. Bd. of Sch. Directors of Panther Valley Sch. Dist.,* 877 F.3d 136, 147 (3d Cir. 2017),[24] such a question is not before us in this case.

Although Plaintiffs do not say so expressly, their argument appears to rest on Rule 23(d), which authorizes district courts "to control communications between class action litigants." *In re Sch. Asbestos Litig.*, 842 F.2d 671, 679 (3d Cir. 1988); *see also Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981) (explaining that a district court has "both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel

---

drawn by the Supreme Court in *Olano*." *United States v. Sok,* 115 F.4th 251, 264 n.11 (3d Cir. 2024) (citing *Olano,* 507 U.S. at 733). Rather, "we would now refer to such untimely or unpreserved arguments as being forfeited." *Id.*

[24] *See also Est. of McMorris v. Comm'r,* 243 F.3d 1254, 1258 n.6 (10th Cir. 2001) (noting that the rule that a court "will not consider an issue that was not raised below" is "relaxed . . . where the argument presents an alternative ground for affirming a lower court ruling on a pure question of law.").

34

and parties"). That authority is often aimed at preventing "[m]isleading communications to class members concerning the litigation," which "pose a serious threat to the fairness of the litigation process . . . and the administration of justice generally." *In re Sch. Asbestos*, 842 F.2d at 680. However, a district court may not exercise its supervisory authority under Rule 23(d) "without a specific record showing by the moving party of the particular abuses by which it is threatened" and must "find that . . . the relief sought would be consistent with the policies of Rule 23 giving explicit consideration to the narrowest possible relief which would protect the respective parties." *Gulf Oil Co.,* 452 U.S. at 102 (quoting *Coles v. Marsh*, 560 F.2d 186, 189 (3d Cir. 1977)).

At least one district court has used Rule 23(d) to invalidate arbitration clauses added during a pending putative class action. *See In re Currency Conversion Fee Antitrust Litig.*, 361 F. Supp. 2d 237 (S.D.N.Y. 2005).[25] *But see Gauzza*

---

[25] Plaintiffs cite two additional district court cases that—although they arose in the FLSA context—rely upon *In re Currency Conversion* and Rule 23(d) to similarly hold that arbitration provisions introduced while litigation was pending were unenforceable. Resp. Br. at 28–29; *see generally Balasanyan v. Nordstrom, Inc.*, Nos. 11-cv-2609, 10-cv-2671, 2012 WL 760566 at *3 (S.D. Cal. Mar. 8, 2012) ("To allow defendants to induce putative class members into forfeiting their rights by making them an offer and failing to disclose the existence of litigation would create an incentive to engage in misleading behavior"); *O'Conner v. Agilant Sols., Inc.*, 444 F.

*v. Prospect Med. Holdings, Inc.,* No. CV 17-3599, 2018 WL 4853294, at \*2 (E.D. Pa. Oct. 4, 2018) (rejecting the notion that "all arbitration agreements imposed after the onset of [class] litigation are inherently confusing, misleading, coercive, and designed to thwart the rights of [putative class members]" (internal quotation marks omitted)). There, several defendant credit card companies amended their cardholder agreements to include arbitration clauses while a putative class action was pending. *Id.* at 243–44. When plaintiffs later sought certification, the defendants moved to exclude class members whose agreements now contained arbitration provisions. *Id.* at 245. The court denied the motion, holding the after-the-fact clauses unenforceable. *Id.* Invoking its supervisory authority under Rule 23(d), the court explained that "when a defendant contacts putative class members for the purpose of altering the status of a pending litigation, such communication is improper without judicial authorization." *Id.* at 253. According to the

---

Supp. 3d 593, 603 (S.D.N.Y. 2020) (reasoning that the arbitration clauses were "improper and misleading" communications because the clauses "did not disclose that by signing the Arbitration Agreements, putative plaintiffs would lose their right to participate in this lawsuit"). *But see Jones v. Judge Tech. Servs. Inc.,* No. CIV.A. 11-6910, 2014 WL 3887733, at \*3 (E.D. Pa. Aug. 7, 2014) (rejecting plaintiffs' argument that the defendant's "implementation of an arbitration agreement for new employees" without notifying them of the pending litigation "constituted an improper communication with putative [FLSA collective] members.").

36

court, that includes "[c]ommunications that threaten the choice of remedies available to class members." *Id.* at 252 (citing *In re Sch. Asbestos*, 842 F.2d at 683). It also faulted the defendants for omitting any mention of the ongoing case from the new clauses, reasoning that Rule 23(d) forbids "mislead[ing] class members by omitting critical information from its communications." *Id.*

Because the issue is not properly before us, we do not decide whether the approach taken in *In re Currency Conversion* and its progeny is permissible. Nonetheless, those cases do suggest that—in appropriate circumstances—a district court *may* have the authority to invalidate mid-litigation contract changes that mislead or coerce putative members or otherwise undermine the orderly administration of a class action.[26] The District Court here did not reach the enforceability question under Rule 23(d)—both because the issue was not presented and because the court resolved arbitrability solely on waiver. Given the "broad authority" granted to district courts under Rule 23(d), *Gulf Oil Co.,* 452 U.S. at 100, and the "specific record showing" required to

---

[26] Of course, there are critical differences between those cases and the case before us. For example, in *In re Currency Conversion*, the defendants "engrafted arbitration clauses" onto the cardholder agreements of plaintiffs whose claims had already arisen. 361 F. Supp. 2d at 249. By contrast, Avis's 2016 arbitration provision is not retroactive and, thus, does not affect the rights of car-renters whose claims arose prior to its inclusion in the car rental agreement.

exercise that authority, *id.* at 102, that issue belongs in the first instance to the District Court on a fully developed record. *See Baron v. Allied Artists Pictures Corp.,* 717 F.2d 105, 109 (3d Cir. 1983) (deeming it "inappropriate to consider … an alternative ground for affirmance" where "[t]he present record is not adequate for the resolution of that question").

In sum, Plaintiffs' small-claims argument fails given the aggregated amount in controversy in this class action, and their mid-litigation-addition argument—raised for the first time on appeal—has been forfeited. We therefore decline to affirm on those grounds. Because the District Court relied exclusively on waiver, we will vacate and remand. On remand, the court may, if properly presented, consider the enforceability of the arbitration provision under Rule 23(d).[27]

## VI.

For the foregoing reasons, we will vacate the District Court's September 30, 2024, order denying Avis's motion to compel and remand for further proceedings consistent with this opinion.

---

[27] Although "arguments not raised before the District Court are waived on appeal[,] . . . when a case is remanded, a district court may consider, as a matter of first impression, those issues not expressly or implicitly disposed of by the appellate decision." *E.E.O.C. v. Kronos Inc.,* 694 F.3d 351, 370 (3d Cir. 2012) (internal quotation marks and citations omitted).